O

1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE WOODROW BASS, | )    NO. CV 12-10036-MAN |
|        **Plaintiff,** | ) |
| | ) |
|        **v.** | )    **MEMORANDUM OPINION** |
| | )    **AND ORDER** |
| **CAROLYN W. COLVIN,**[1] | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
|        **Defendant.** | ) |
| | ) |

Plaintiff filed a Complaint on November 30, 2012, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On January 14, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on September 16, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties' Joint Stipulation under submission

---

[1]      Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability and DIB on October 14, 2009. (Administrative Record ("A.R.") 19.)  Plaintiff, who was born on October 23, 1960[2] (A.R. 30), claims to have been disabled since April 3, 2009, due to depression, anxiety, cardiovascular disease, sleep apnea, asthma, irritable bowel disease, high cholesterol, and a history of testicular cancer (A.R. 19, 191).  Plaintiff has past relevant work ("PRW") experience as a warehouse worker.  (A.R. 29.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff requested a hearing.  (A.R. 19.)  On April 28, 2011, plaintiff, who was represented by counsel, appeared and testified at hearings before Administrative Law Judge Lisa D. Thompson (the "ALJ"). (*Id.*)  Medical expert Donald M. Blackman and vocational expert Frank "Nick" Corso, Jr. also testified.  (*Id.*)  On September 12, 2011, the ALJ denied plaintiff's claim (A.R. 19-31), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-6). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In her September 12, 2011 decision, the ALJ found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and plaintiff has not engaged in substantial gainful activity since April 3, 2009, the alleged onset date of his disability.  (A.R. 21-22.)  The ALJ determined that plaintiff has the severe impairments of depressive disorder, obesity,

---

[2]      On the alleged disability onset date, plaintiff was 48 years old, which is defined as a younger individual.  (A.R. 30, citing 20 C.F.R. § 404.1563.)  Plaintiff's age category has subsequently changed to that of "closely approaching advanced age."  (*Id.*)

history of cardiovascular disease, hypertension, asthma, irritable bowel syndrome, and gastroesphageal reflux disease.  (A.R. 22-24.)  The ALJ also determined that plaintiff does not have any severe impairment related to his past episode of testicular cancer.  (A.R. 24.)  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform:

> medium work as defined in 20 CFR 404.1567(c) except that he:  should avoid concentrated exposure to environmental irritants without proper ventilation; is also able to perform simple, repetitive tasks in a low stress work environment (defined as simple work related decisions with no production rate-pace work but where work would be essentially isolated); with no more than occasional changes to work setting and occasional supervision; and no more than occasional interaction with supervisors, co-workers and the general public.

(A.R. 26.)  In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well as the medical evidence and opinions of record.  (A.R. 26-29.)

Based on plaintiff's RFC and the vocational expert's testimony, the ALJ found that plaintiff was unable to perform his PRW as a warehouse worker.  (A.R. 29-30.)  However, based on plaintiff's age, education,[3] work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that "there are jobs that exist in significant numbers in the national

---

[3]    The ALJ determined that plaintiff "has at least a high school education and is able to communicate in English."  (A.R. 30.)

1  economy that [plaintiff] can perform," including the jobs of hospital cleaner, cleaner (industrial),
2  and housekeeper/cleaner.  (A.R. 30-31.)

3

4      Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the
5  Social Security Act, from April 3, 2009, the alleged onset date, through September 12, 2011, the
6  date of the ALJ's decision.  (A.R. 31.)

7

8                        **STANDARD OF REVIEW**

9

10     Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine
11 whether it is free from legal error and supported by substantial evidence in the record as a whole.
12 Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence
13 as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).
14 The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett
15 v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute
16 substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v.
17 Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

18

19     Although this Court cannot substitute its discretion for that of the Commissioner, the Court
20 nonetheless must review the record as a whole, "weighing both the evidence that supports and
21 the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health
22 and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995
23 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical
24 testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
25 1995).

26

27     The Court will uphold the Commissioner's decision when the evidence is susceptible to
28 more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

                                           4

1   However, the Court may review only the reasons stated by the ALJ in his decision "and may not

2   affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett,

3   340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless

4   error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential

5   to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

6   Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400

7   F.3d at 679.

8

9                                    **DISCUSSION**

10

11   **I.      The ALJ Failed To Give Specific And Legitimate Reasons For**

12   **          Rejecting The Opinions Of Plaintiff's Treating Physicians Drs. Curtis**

13   **          and Kaiser.**

14

15          Plaintiff claims that the ALJ failed to properly consider the opinions of treating physicians

16   Drs. Curtis and Kaiser.[4]  (Joint Stipulation ("Joint Stip.") at 4-15.)

17

18          It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical

19   testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician

20   opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion

21   carries more weight than an examining physician's, and an examining physician's opinion carries

22   more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.

23   2001); 20 C.F.R. § 404.1527(d).

24

25

26          [4]      The heading of plaintiff's claim is that the ALJ failed to consider only the opinion of
27   treating physician Dr. Curtis, but plaintiff argues that the ALJ failed to consider both the opinions
     of Drs. Curtis and Kaiser.  As Dr. Kaiser worked in conjunction with Dr. Curtis, and their opinions
28   regarding plaintiff's impairments and limitations are similar, if not the same, the Court construes
     plaintiff's claim to include Dr. Kaiser's opinion as well.

                                            5

1    The opinions of treating physicians are entitled to the greatest weight, because the treating

2    physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881

3    F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may

4    be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

5    1995).  When contradicted by another doctor, a treating physician's opinion may only be rejected

6    if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the

7    record. Id.

8

9    In determining plaintiff's mental RFC, the ALJ expressly relied on the findings of

10   consultative examining psychologists Dr. Marjorie Cohn and Dr. Bahareh Talei and gave less

11   evidentiary weight to the opinions of treating physicians Dr. Kaiser and Dr. Curtis. (A.R. 29.)  It

12   also appears the ALJ implicitly relied on the opinion of non-examining medical expert Dr. Betty

13   Borden as her opinion is consistent with that of Dr. Talei. (See A.R. 24.)

14

15   On May 28, 2010, Dr. William W. Kaiser, a psychiatrist, working with Dr. Thomas Curtis,

16   M.D., generated a "Treating Physician's Initial Evaluation and Permanent and Stationary Report

17   with Psychological Test Results and with a Request for Authorization for Psychiatric Treatment"

18   in connection with plaintiff's worker's compensation claim. (A.R. 385-410.)  In the report, Dr.

19   Kaiser detailed plaintiff's history, including his work, work injury, personal and family, medical and

20   mental health history, and current symptoms. (A.R. 386-92.)  Dr. Kaiser also reported the results

21   of a mental status examination and psychological testing conducted on May 21, 2010. (A.R. 392-

22   96.)  He then diagnosed plaintiff with "depressive disorder not otherwise specified with anxiety"

23   and assessed a GAF score of 47.[5] (A.R. 396-97.)  Dr. Kaiser opined that plaintiff has:  a moderate

24

25         [5]    A GAF score is the clinician's judgment of the individual's overall level of

26   functioning. It is rated with respect only to psychological, social, and occupational functioning,
     without regard to impairments in functioning due to physical or environmental limitations.

27   DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (4th Ed. 2000).  A GAF
     rating of 41–50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals,

28   frequent shoplifting) OR any serious impairment in social, occupational, or school functioning
     (e.g., no friends, unable to keep a job)." Id. at 34.

1  impairment in activities of daily living and concentration, persistence, and pace; a moderate
2  impairment in appropriateness; a marked impairment with social functioning and adaptation
3  (deterioration or decompensation in complex work-like settings); and a marked impairment in
4  independence and effectiveness. (A.R. 400., 402.) Dr. Kaiser also opined that plaintiff's "degree
5  of permanent emotional impairment would be estimated as a marked degree of permanent mental
6  and behavioral impairment significantly impeding useful functioning." (A.R. 399, 402.)

7

8  On July 21, 2010, Dr. Curtis conducted a follow-up evaluation. (A.R. 414-23.) After
9  reviewing plaintiff's updated medical record (A.R. 424-29) and administering further psychological
10 tests, Dr. Curtis diagnosed plaintiff with "depressive disorder, not otherwise specified with anxiety"
11 and assessed a GAF score of 47. (A.R. 415.) He also noted that there was no change in
12 plaintiff's disability status since the prior report. (A.R. 421.)

13

14 The ALJ discounted the opinions of Drs. Kaiser and Curtis because: (1) their reports were
15 prepared upon the request of plaintiff's attorney in support of his worker's compensation claim;
16 (2) their findings were based on plaintiff's subjective complaints and plaintiff's responses to formal
17 testing rather than objective clinical findings; (3) during these examinations, plaintiff's responses
18 were indicative of symptom exaggeration; and (4) their opinions were inconsistent with that of
19 examining psychiatrists Drs. Talei and Borden. (A.R. 28.)

20

21 The ALJ's first reason for rejecting the opinions of Drs. Curtis and Kaiser -- *to wit*, that their
22 reports were prepared at the request of plaintiff's attorney in support of his worker's
23 compensation claim -- is unavailing. First, to the extent that the ALJ infers that Drs. Curtis and
24 Kaiser were biased because they were asked by plaintiff's attorney to prepare reports on plaintiff's
25 behalf, the ALJ has failed to point to, and the record does not contain, any evidence of
26 impropriety or bias on the part of Drs. Curtis or Kaiser. *See* Lester, 81 F.3d at 832 (noting that
27 "'[t]he Secretary may not assume that doctors routinely lie in order to help their patients collect
28 disability benefits'") (citation omitted); *see also* Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.

1    1996) (noting that the source of a report is a factor that justifies rejection only if there is evidence
2    of actual impropriety or no medical basis for the opinion).  Further, an ALJ "may not disregard a
3    physician's medical opinion simply because it was initially elicited in a state workers' compensation
4    proceeding, or because it is couched in the terminology used in such proceedings."  Booth v.
5    Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citing Coria v. Heckler, 750 F.2d 245, 247
6    (3d Cir. 1984) (holding that by failing to consider medical reports submitted in state workers'
7    compensation proceedings the ALJ failed to weigh all the evidence of record)).  Accordingly, the
8    ALJ's first rationale does not constitute a specific and legitimate reason for rejecting the opinions
9    of Drs. Curtis and Kaiser.

10

11       The ALJ's second reason -- *to wit*, that their opinions "appear to be more based on
12   [plaintiff's] subjective complaints and subjective responses to formal testing than based on
13   objective clinical findings" -- is also not legitimate.  It is true that the opinion of a physician
14   premised primarily or to a large extent on a claimant's subjective complaints may be discounted
15   where the evidence in the record supports the ALJ in discounting the claimant's credibility.  *See*
16   Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Morgan v. Comm'r of the Soc. Sec.
17   Admin., 169 F.3d 595, 601 (9th Cir. 1999).  On the other hand, "an ALJ does not provide clear
18   and convincing reasons for rejecting an examining physician's opinion by questioning the
19   credibility of the [claimant's] complaints where the [physician] does not discredit those complaints
20   and supports his ultimate opinion with his own observations."  Ryan v. Comm'r of Soc. Sec., 528
21   F.3d 1194, 1199–1200 (9th Cir. 2008) (noting nothing in record suggested that the examining
22   physician relied on claimant's description of her symptoms more heavily than his own clinical
23   observations).  Indeed, there does not appear to be any indication in the evaluation reports
24   issued by Drs. Curtis and/or Kaiser that they relied primarily on the self-reporting of plaintiff in
25   forming their opinions.  Rather, Drs. Curtis and Kaiser appear to have provided their own clinical
26   observations of plaintiff in making their clinical findings, considered plaintiff's extensive medical
27   history, as well as conducted a mental status examination of him and performed extensive
28   psychological testing.  (*See* A.R. 385-410, 414-23, 424-29); *see also* Sprague v. Bowen, 812 F.2d

1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting diagnosis of depression is competent evidence); Sanchez v. Apfel, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000) (when mental illness is basis of disability claim, clinical data may consist of diagnoses and observations of professionals trained psychopathology); Clester v. Apfel, 70 F. Supp. 2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnostic impression of psychiatric disorder, just as results of physical examination provide basis for diagnosis of physical illness or injury). Accordingly, the ALJ's second reason cannot constitute a specific and legitimate reason for rejecting the opinions of Drs. Curtis and Kaiser.

The ALJ's third reason for rejecting the opinions of Drs. Curtis and Kaiser -- *to wit*, that "during these examinations, [plaintiff] was noted to give responses indicative of symptom exaggeration" -- is also unavailing. (A.R. 28.) As discussed above, Drs. Curtis and Kaiser did not render their opinions solely based on solely plaintiff's subjective complaints. Moreover, in support of the ALJ's argument that plaintiff's responses were indicative of symptom exaggeration, the Commissioner cites Dr. Kaiser's observation that an abnormal testing result of the "Minnesota Multiphasic Personality Inventory-2" or "MMPI-2" could suggest possible symptom exaggeration. (*See* Joint Stip. at 20.) However, Dr. Kaiser actually noted that these validity scores may be based on a host of factors. Dr. Kaiser explained that: "Such MMPI-2 validity scores could reflect intense confusion, a random answering pattern due to factors including cognitive/perceptual dysfunctioning, an overwhelming of psychological coping mechanisms, a lack of cooperation, and/or an exaggeration of symptoms as a cry for help and/or as a purposeful manipulation for secondary gain (malingering)." (A.R. 394.) Critically, however, Dr. Kaiser concluded that:

> *In this particular case, the most likely cause for invalidity would be a combination of factors of actual intense emotional symptomatology, overwhelmed coping mechanisms, impaired motivation and the inhibitory effects of depression, frustration, irritability, anger and fatigue. There may also be high symptom reporting due to inflation caused by anger and litigation contentiousness.*

9

1  (*Id.*, emphasis added.)  As such, the ALJ's third reason somewhat mischaracterizes the opinions

2  of Drs. Curtis and Kaiser and does not constitute a specific and legitimate reason for rejecting the

3  opinions of Drs. Curtis and Kaiser.

4

5  Finally, the ALJ rejected the opinions of Dr. Kaiser and Curtis, because "Dr. Borden

6  reviewed the available evidence and largely agreed with the conclusions of Dr. Talei." (A.R. 28.)

7  However, the ALJ provided no explanation as to her statement and, critically, provided no

8  explanation to the extent of any inconsistencies.  An inconsistency with other medical opinions

9  does not necessarily invalidate a physician's findings; the ALJ must provide specific and legitimate

10  reasons to reject the findings and not just point out that inconsistencies exist.   A mere

11  inconsistency between doctors' opinions does not allow the ALJ to simply select one opinion based

12  solely on the fact that an inconsistency exists.  It is the ALJ's responsibility to confront the conflict

13  and explain how the conflict is resolved by assigning weight to differing opinions based on cogent,

14  specific, and legitimate reasons.  Morgan, 169 F.3d at 603; Reddick v. Chater, 157 F.3d 715, 722,

15  725 (9th Cir. 1998).  Thus, merely pointing out that a conflict of opinion exists is not a legitimate

16  ground, in and of itself, to assign weight or discredit one of the opinions.[6]

17

18  Accordingly, for the aforementioned reasons, the ALJ failed to properly assess the opinions

19  of Drs. Curtis and Kaiser.   On remand, the ALJ either must provide specific and legitimate reasons

20  for rejecting their opinions or factor those opinions into her assessment of plaintiff's RFC.

21  ///

22  ///

23  ///

24

25

26  [6]     While the Commissioner now offers other reasons to explain the ALJ's rejection of
     the opinion of Drs. Curtis and Kaiser (Joint Stip. at 20-21), the Court cannot entertain these post

27  hoc rationalizations.  *See, e.g.,* Orn, 495 F.3d at 630 ("We review only the reasons provided by
     the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did

28  not rely"); Connett, 340 F.3d at 874 (finding that "[i]t was error for the district court to affirm the
     ALJ's . . . decision based on evidence that the ALJ did not discuss").

1

2

## II.    Remand Is Required.

3      The decision whether to remand for further proceedings or order an immediate award of
benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th
Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or
where the record has been fully developed, it is appropriate to exercise this discretion to direct
an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further
proceedings turns upon the likely utility of such proceedings.").  However, where there are
outstanding issues that must be resolved before a determination of disability can be made, and
it is not clear from the record that the ALJ would be required to find the claimant disabled if all
the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

12

13      Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-
mentioned deficiencies and errors.

///
///
///
///
///
///
///
///
///
///
///
///
///

28

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED:  April 3, 2014

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

12